# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| RAY BLAND OLIVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:19-cv-02104-MHH-HNJ |
| ) | |
| OFFICER COREY O. FOX, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Ray Bland Oliver, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. (Doc. 1). Plaintiff names Officer Corey O. Fox as defendant. (*Id.* at 2). Plaintiff seeks compensatory damages, punitive damages, and injunctive relief. (*Id.* at 5). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

For the reasons stated herein, the undersigned **RECOMMENDS** the court **GRANT** the motion for summary judgment in part and **DENY** it in part. The court should **GRANT** defendant's motion for summary judgment on plaintiff's claims against him in his official capacity. The court should **DENY** defendant's motion for

1

summary judgment on plaintiff's excessive force claim against him in his individual capacity.

## I. Procedural History

On January 23, 2020, the undersigned entered an Order for Special Report directing the Clerk to forward a copy of the complaint to the named defendant and directing defendant to file a special report addressing plaintiff's factual allegations. (Doc. 7). The undersigned advised defendant that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*Id.*).

On March 23, 2020, defendant filed a special report, supplemented by affidavits and/or other evidence. (Doc. 9). On May 11, 2020, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified plaintiff that he had 21 days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 10). The undersigned also advised plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. (*Id.*). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On June 3, 2020, plaintiff filed a motion for extension of time to file a response. (Doc. 11). Although the court granted plaintiff's motion (doc. 12), plaintiff did not file a response.

This matter now proceeds before the court on defendant's motion for summary judgment.

## II. Standard of Review

Because the court has construed defendant's special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations omitted).

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III. Summary Judgment Facts[1]

Plaintiff is an inmate housed at St. Clair Correctional Facility in Springville, Alabama. (Doc. 4). At the time of the incident on September 4, 2019, the State housed plaintiff at W.E. Donaldson Correctional Facility in Bessemer, Alabama. (Doc. 1 at 4, 6). After the incident, the State transferred plaintiff to Limestone Correctional Facility. (*Id.* at 7).

Plaintiff alleges on September 4, 2019, at approximately 9:35 a.m., he was going to his unit when Officer Fox called him into the "ice room." (*Id.* at 4–5). Plaintiff

---

[1] The following facts are undisputed or, if disputed, taken in a light most favorable to the non-moving party. *Chapman,* 229 F.3d at 1023. Factual disputes are addressed in footnote form.

alleges that Officer Fox "started beating him." (*Id.* at 5).[2] Plaintiff states he was "later found on the west hall unconscious by Sgt. Edmond." (*Id.*).[3]

Plaintiff suffered "a broken nose, a damage[d] eye that he cannot use at this moment [and] fractures to his facial area." (*Id.*). Plaintiff's body chart indicated several injuries, including "orbital edema, temple edema, bloody nose/teeth, l[eft] eye blood shot [and] swollen shut. Large knot to top of head." (Doc. 9-1 at 3). In plaintiff's written statement about the incident, the officer noted, "Inmate refused to write statement." (*Id.* at 4).

The nurse evaluation indicated that plaintiff stated, "I don't remember what happened." (Doc. 9-3 at 23). A Mental Health Referral Form indicated plaintiff was referred on September 4, 2019, for "altercation/intoxicated." (Doc. 9-1 at 6).

At approximately 11:10 a.m. on September 4, 2019, staff took plaintiff to the University of Alabama-Birmingham hospital for additional medical treatment and possible facial fractures. (*Id.* at 1–2; Doc. 9-4 at 50). The physician noted "[t]he patient

---

[2] Officer Fox states that he observed plaintiff "behind the kitchen in an unauthorized area." (Doc. 9-2 at 1). Fox commanded plaintiff to return to his living area. (*Id.*). Plaintiff yelled obscenities and refused his commands. (*Id.*). When Fox reached plaintiff, plaintiff said "You just don't like black people," and "swung and hit [Fox] in [his] face knocking [him] off balance and [his] radio dropped to the ground." (*Id.*). Fox delivered punches and palm heel strikes to plaintiff's face and body. (*Id.*). Plaintiff continued to fight. (*Id.*). Fox performed a "two one takedown," gained control of plaintiff, and radioed for Sgt. Edmonds. (*Id.*). Edmonds responded and took custody of plaintiff. (*Id*). (*See also,* Incident Report, Doc. 9-1 at 1).

[3] According to the Duty Officer Report and Incident Report, Sgt. Edmonds entered the South Unit at approximately 9:38 a.m. and escorted plaintiff to the health care unit. (Doc. 9-1 at 1–2).

5

is unable/unwilling to provide much history as to the circumstance of his trauma," but he reported multiple injuries, primarily to his head, and decreased vision in his left eye. (Doc. 9-4 at 53). A CT scan of plaintiff's head revealed a subgaleal hematoma; a CT scan of plaintiff's maxillofacial area showed moderate soft tissue swelling but no bony injury. (*Id.* at 54; Doc. 9-5 at 1, 3). Plaintiff's physician diagnosed him with rhabdomyolysis, facial contusion, ocular contusion with chemosis, and subgaleal hematoma. (Doc. 9-4 at 54–55).

During a dentistry consult, plaintiff indicated he had been in a fight. (Doc. 9-5 at 5). The physician noted loose teeth, diagnosed non-displaced trauma, and prescribed a soft diet for three to four weeks, as well as over-the-counter pain medication. (*Id.* at 5–6). During an ophthalmology consult, the physician noted plaintiff "presents after assault v fall at prison" and diagnosed a corneal abrasion and acute vision loss. (*Id.* at 7–8).

The Incident Report reflects that plaintiff returned to the facility on September 5, 2019, and the prison placed in a cell for medical observation. (Doc. 9-1 at 1). The Report further states that the prison reassigned plaintiff to restrictive housing and he received disciplinary action for assault on an employee. (*Id.*; *see also,* Doc. 9-1 at 5).

On September 11, 2019, prison staff took plaintiff to the Callahan Eye Hospital Emergency Room for evaluation of his left eye. (Doc. 9-4 at 41). Callahan Eye Clinic records indicate plaintiff stated he "got kicked in [his] face" and was unable to see. (*Id.* at 42). Plaintiff was diagnosed with traumatic iritis, loss of vision in his left eye, and an

6

abrasion of the left cornea. (*Id.* at 45). The clinic prescribed him Motrin and prednisone eye drops. (*Id.*). On September 19, 2019, the Callahan Eye Clinic saw plaintiff for a follow-up. (*Id.* at 32–37). The physician noted that plaintiff's eye looked healthy and normal, the corneal abrasion was resolved, and medicines would be tapered and discontinued. (*Id.*).

Plaintiff seeks $500,000 in compensatory damages, $500,000 in punitive damages, and termination of Officer Fox. (Doc. 1 at 5).

## IV. Analysis

### A. Official Capacity Claims

To the extent plaintiff lodges constitutional claims against Officer Fox in his official capacity for money damages, plaintiff's claims warrant dismissal under the doctrine of sovereign immunity. The Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Likewise, Eleventh Amendment immunity also bars claims for money damages against officials and employees of state entities sued in their official capacities. *Id.* at 101.

Based on the foregoing, the court should grant defendant's motion for summary judgment on official capacity claims for monetary relief.

### B. Individual Capacity Claims

Defendant also moves for summary judgment on plaintiff's Eighth Amendment excessive force claim against him in his individual capacity.[4]

Plaintiff's excessive force allegations must be analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374–75 (11th Cir. 1999). In *Hudson*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7.

With these principles in mind, the Supreme Court set out certain factors that should be considered when evaluating whether force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Whitley,* 475 U.S. at 321.

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of

---

[4] The plaintiff alleges that his Fourteenth Amendment rights also were violated. (Doc. 1 at 3). Because the plaintiff was a convicted prisoner at the time of the incident (*id.* at 4), the Eighth Amendment governs the review of his claims. *See Piazza v. Jefferson Cnty., Ala.,* 923 F.3d 947, 952 (11th Cir. 2019).

> "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (citations omitted).

To create a genuine issue of material fact, plaintiff must come forward with evidence from which a reasonable inference can be drawn that defendant acted maliciously and sadistically. Generally, courts "do not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).

Defendant argues that plaintiff cannot show that he acted maliciously or sadistically to cause harm because "inmate Oliver initiated the altercation by striking Officer Fox." (Doc. 9 at 5). Thus, defendant argues, "given inmate Oliver's aggressive behavior and since any alleged force was 'applied in a good faith effort to maintain or restore discipline,' Officer Fox acted correctly and there is no constitutional violation. (*Id.*) (citation omitted). However, the parties have presented different versions of the facts as to the use of force in this case.

Plaintiff states that on the day of the incident, he was on his way to his unit when Officer Fox called him into the "ice room," which is located in the South Unit. (Doc. 1 at 4–5; Doc. 9-2 at 1). Plaintiff alleges that Officer Fox "started beating him," and that Sgt. Edmond found plaintiff at some point later in the West hall in an unconscious state. (Doc. 1 at 5).

9

Officer Fox states that he saw plaintiff in the South Unit, behind the kitchen in an unauthorized area. (Doc. 9-2 at 1). Fox states that plaintiff refused to return to his unit, started yelling at Fox, and hit Fox in the face. (*Id.*). Fox performed a "two one takedown" to gain control of plaintiff and radioed for Sgt. Edmonds, who responded and took plaintiff into custody. (*Id;* Doc. 9-1 at 1). The court acknowledges that the Duty Officer Report and Incident Report state that Sgt. Edmonds entered the South Unit at approximately 9:38 a.m. and escorted plaintiff to the health care unit. (Doc. 9-1 at 1–2). However, in viewing the evidence in a light most favorable to plaintiff and in drawing all reasonable inferences against the moving party, *see Chapman,* 229 F.3d at 1023, a genuine issue of fact exists as to the need for force by Officer Fox in this instance.

Furthermore, although a Mental Health Referral Form stated the reason for the referral was "altercation/intoxicated" (doc. 9-1 at 6), nothing in the record, including Officer Fox's statement, indicates plaintiff had been drinking or was inebriated at the time of the incident. As to the extent of injury, UAB and Callahan Eye Hospital medical records indicate plaintiff suffered extensive injuries, including: temporary loss of vision in his left eye, a corneal abrasion, rhabdomyolysis, a facial contusion, ocular contusion with chemosis, subgaleal hematoma, loose teeth, and trauma. (Doc. 9-4 at 32–37, 41–42, 45, 54–55; Doc. 9-5 at 5–6). Based on the conflicting accounts and construing the facts in the light most favorable to plaintiff, the court finds that additional factual issues exist as to the relationship between the need and amount of force used, the threat

reasonably perceived by Officer Fox, and efforts made to reduce the severity of the response.

Because a genuine dispute of material fact exists, which cannot be resolved at the summary judgment stage, defendant's motion for summary judgment warrants denial on plaintiff's individual capacity claims.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the court **GRANT** the motion for summary judgment in part and **DENY** it in part.

The court should **GRANT** defendant's motion for summary judgment on plaintiff's claims against him in his official capacity.

The court should **DENY** defendant's motion for summary judgment on plaintiff's excessive force claim against him in his individual capacity.

The undersigned **FURTHER RECOMMENDS** that the court **REFER** plaintiff's remaining claim to the undersigned for further proceedings.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and

recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 30th day of November, 2020.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE